Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 3114 | **DATE** | 11/19/2003 |
| **CASE TITLE** | JULIE CLARK vs. HEWITT ASSOCIATES, LLC, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

MEMORANDUM OPINION AND ORDER

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   Enter Memorandum Opinion And Order. John Hancock's motion to dismiss all counts is granted. Hewitt's motion to dismiss Counts II and III is granted; however, its motion to dismiss Count I is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | NOV 2 0 2003 | 24 |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| LG | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JULIE CLARK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 03 C 3114 |
| | ) | |
| HEWITT ASSOCIATES, LLC, an Illinois | ) | |
| limited liability company, HEWITT | ) | |
| ASSOCIATES LIFE INSURANCE PLAN, and | ) | DOCKETED |
| JOHN HANCOCK LIFE INSURANCE | ) | NOV 2 6 2003 |
| COMPANY, a Massachusetts corporation, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Julie Clark brought this action against Hewitt Associates, LLC, and Hewitt's Life Insurance Plan (collectively Hewitt), and John Hancock Life Insurance (John Hancock), for failures of duty in violation of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et seq.* (Count I), breach of contract (Count II), and an improper insurance claims practice in violation of the Illinois Insurance Code (Count III). Both Hewitt and John Hancock filed motions to dismiss all three counts. Hancock's motion is granted, as well as Hewitt's motion to dismiss Counts II and III. Hewitt's motion to dismiss Count I is denied.

## BACKGROUND

The following facts are as alleged by plaintiff in her complaint. She was married to Thomas Clark (Clark), a former employee of Hewitt who was enrolled in the company's health and welfare benefits program. John Hancock administers the basic and optional life insurance

24

plans for Hewitt employees and their beneficiaries. Hewitt is the designated plan administrator. Hewitt paid for Clark's basic life insurance coverage of $55,000, while Clark paid for the additional optional coverage of $165,000, which he elected through Hewitt's on-line service. Clark named plaintiff as the beneficiary of both policies.

On January 29, 2002, Clark committed suicide. Following her husband's death, plaintiff submitted a claim for benefits under Clark's basic and optional life insurance policies. While John Hancock paid plaintiff $55,000 for Clark's basic coverage, it denied her claim for $165, 000 under the optional coverage policy. In a letter dated May 14, 2002, John Hancock explained that the optional life insurance policy expressly excluded payment for death due to suicide during the first two years after the employee becomes insured. Clark began working for Hewitt on May 7, 2001, and he committed suicide nine and-a-half months later. Plaintiff alleges that defendants never informed Clark of this provision in his policy. She states that defendants did not provide Clark with information regarding the terms of his optional life insurance at the time he applied, nor with a copy of the insurance policy afterwards. Plaintiff's complaint further alleges that on April 24, 2003, her attorney requested a reconsideration of the benefits denial, as well as proof that Clark received information regarding the conditions on his life insurance policy. As of July 31, 2003, plaintiff had not received any response.

## DISCUSSION

A Federal Rule of Civil Procedure 12(b)(6) motion to dismiss tests the sufficiency of the complaint, not the merits of the case. <u>Triad Assocs., Inc. v. Chicago Hous. Auth.</u>, 892 F.2d 583, 586 (7th Cir. 1989). In deciding a motion to dismiss, the court must assume the truth of all well-

pleaded allegations, making all inferences in the plaintiff's favor. <u>Sidney S. Arst Co. v. Pipefitters Welfare Educ. Fund</u>, 25 F.3d 417, 420 (7th Cir. 1994). The court should dismiss a claim only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957).

<u>Count I</u>

Both Hewitt and John Hancock filed motions to dismiss plaintiff's three counts. In Count I, plaintiff alleges that defendants failed to provide Clark with an explanation of benefits and a summary plan description, and also that they breached their fiduciary duty. Plaintiff's prayer for relief requests $165,000, the benefits to which she is entitled under the optional life insurance plan, plus interest, expenses and attorney's fees. In plaintiff's response to John Hancock's motion to dismiss, she asserts that both 29 U.S.C. § 1132(a)(3) and § 1132(c)(1)(B) provide remedies for Count I.

Hewitt and John Hancock present a number of arguments for dismissal of this count. Both defendants argue that plaintiff may not bring her claim for $165,000 in life insurance benefits under § 1132(a)(3) because it only allows for equitable relief, not legal relief. They further argue that plaintiff may not seek relief under this "catchall" section because she can avail herself of a remedy under 29 U.S.C. § 1132(a)(1)(B) – the sole remedy for plaintiff's claim for life insurance benefits. We address each of these arguments in turn.

In Count I of her complaint plaintiff cites 29 U.S.C. §§ 1104, 1022, and 1023 in support of her claims. Section 1104 addresses fiduciary duties, § 1022 explains the requirements of a summary plan description, and § 1023 discusses annual reports. Plaintiff must bring a civil action for violation of these sections under 29 U.S.C. §1132. In her response brief plaintiff

argues that §§ 1132(a)(3) and 1132(c)(1)(B) provide remedies for her claims in Count I. Section 1132(a)(3) states, "A civil action may be brought- . . . (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." Defendants argue that plaintiff may not bring this action under § 1132(a)(3) because she is asking for legal relief, the money due to her under her husband's optional life insurance plan, and this section only contemplates equitable relief.

Plaintiff does not dispute that § 1132(a)(3) is limited to equitable relief. Instead, she contends that she is seeking equitable relief – asking the court to "estop Defendant from denying coverage based on policy language that neither she nor her husband had ever seen." However, Count I of plaintiff's complaint clearly requests $165,000 allegedly owed her under her husband's life insurance policy. In Primax Recoveries, Inc. v. Sevilla, 324 F.3d 544, 548 (7th Cir. 2003), Judge Posner recognized that "[a]lmost any legal claim can be given the form of an equitable claim (that is, a claim seeking an order to do or not do something)," but he cautioned, "such games with form should be discouraged." By labeling her monetary relief "estoppel," plaintiff appears to be playing such a game.

Defendants further argue that plaintiff may not avail herself of relief under § 1132(a)(3) because she has the right to seek relief under § 1132(a)(1)(B). We agree. Section 1132(a)(1)(B) states, "A civil action may be brought – (1) by a participant or beneficiary– . . .(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan . . . ." Plaintiff is the

named beneficiary of the optional life insurance plan and she is seeking benefits under the plan, she thus has the right to seek relief under § 1132(a)(1)(B). In Varity Corp. v. Howe, 516 U.S. 489, 512 (1996), the Supreme Court explained that the "'catchall' provisions [§ 1132(a)(3) and § 1132(a)(5)] act as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 [29 U.S.C. § 1132] does not elsewhere adequately remedy." The Supreme Court granted relief under § 1132(a)(3) to the plaintiffs in Varity Corp. after determining that they could not proceed under any other section of ERISA. Id. at 515. However, relying on the Supreme Court's reasoning, courts have denied relief under "catchall" provisions of ERISA when the plaintiff could have brought a claim for denial of benefits under § 1132(a)(1)(B). See Wilkins v. Baptist Healthcare System, Inc., 150 F.3d 609, 615 (6th Cir. 1998)("Because § 1132(a)(1)(B) provides a remedy for Wilkins's alleged injury that allows him to bring a lawsuit to challenge the plan administrator's denial of benefits to which he believes he is entitled, he does not have a right to a cause of action for breach of fiduciary duty pursuant to § 1132(a)(3)."); Schluter v. Principal Life Insurance Co., 2001 WL 476589 at *4 (N.D. Ill. 2001)("Schluter could not seek equitable relief under § 502(a)(3) because she is provided adequate relief by her right to bring a claim for denial of benefits under § 502(a)(1)(B)"); White v. Sustrand Corp., 2000 WL 713739 at *12 (N.D.Ill. 2000); Frank v. Ameritech Corp., 1999 WL 1011107 at *4 (N.D.Ill. 1999).

Plaintiff argues that she should not be precluded from seeking relief under § 1132(a)(3) because she may not be able to obtain benefits under § 1132(a)(1)(B) if Clark's life insurance policy does exclude benefits for those who commit suicide within two years of enrollment. Plaintiff attempts to analogize her situation with that of the plaintiffs in Varity Corp. The

plaintiffs in that case were precluded from bringing a claim under § 1132(a)(1)(B) because it only applies to participants and beneficiaries, and plaintiffs were no longer enrolled in the plan. Varity Corp., 116 S. Ct. at 1079. Plaintiff here, on the other hand, does have the right to bring a claim under § 1132(a)(1)(B), regardless of its merits; therefore, she may not seek relief under § 1132(a)(3). *See* White v. Sundstrand, 2000 WL 713739 at *12 (N.D.Ill. 2000)(finding that plaintiffs' unsuccessful denial of benefits claims under § 1132(a)(1)(B) did not make their breach of fiduciary duty claim under § 1132(a)(3) viable).

John Hancock goes on to argue why plaintiff cannot state a claim against the company under § 1132(a)(1)(B) – Clark's life insurance plan expressly excludes payment under the given circumstances and an action under this section may only be maintained against the plan itself. The Seventh Circuit has held that actions to recover ERISA plan benefits may only be brought against the benefit plan. Neuma, Inc. v. AMP, Inc., 259 F.3d 864, 872 n.4 (7th Cir. 2001)("We continually have noted that 'ERISA permits suit to recover benefits only against the Plan as an entity.'"); Jass v. Prudential Health Care Plan, Inc., 88 F.3d 1482, 1490 (7th Cir. 1996)("The appropriate defendant for a denial of benefits claim would be the Plan . . . ."). Therefore, plaintiff's claim for benefits under § 1132(a)(1)(B) cannot be brought against John Hancock. However, it can be brought against Hewitt Associates Life Insurance Plan.

John Hancock argues that plaintiff's claim for benefits under § 1132(a)(1)(B) fails, regardless of the named defendant, because the plan expressly excludes benefits for a death resulting from suicide within two years of the date the employee becomes insured. Since the complaint admits that Clark committed suicide within two years of becoming insured, John Hancock argues that the claim must be dismissed. However, a dismissal of this claim is

inappropriate because the provisions of Clark's insurance policy are contested by the parties. Plaintiff makes clear that she "does not, could not, admit that the effective policy contained the exclusionary language" to which John Hancock refers. As all allegations in plaintiff's complaint are taken as true, and all ambiguities are resolved in plaintiff's favor, plaintiff states a claim against Hewitt under § 1132(a)(1)(B).

Plaintiff maintains that she can also seek relief in count I under § 1132(c)(1)(B). This section states: "(1) Any administrator ... (B) who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper." 29 U.S.C. §1132(c)(1)(B). John Hancock and Hewitt present different arguments for the dismissal of this claim. John Hancock argues that plaintiff cannot state a claim against the company under this section because the statute only applies to plan administrators. The company also contends that even if plaintiff could bring an action pursuant to § 1132(c)(1)(B), granting death benefits would not be a proper remedy for this technical violation.

We agree that this action cannot be brought against John Hancock – it is not the alleged plan administrator. The Seventh Circuit has held that the plan administrator is the proper party to sue for a failure to provide a summary plan description. <u>Hightshue v. AIG Life</u>

Insurance Co., 135 F.3d 1144, 1149 (7th Cir. 1998); *see* Klosterman v. Western General Management, Inc., 32 F.3d 1119, 1122 (7th Cir. 1994)(finding that both the ERISA statute and case law make clear that the only party responsible for violations of disclosure requirements is the plan administrator). As stated above, plaintiff's complaint identifies Hewitt, not John Hancock, as the plan administrator of Clark's optional life insurance policy. Plaintiff argues that John Hancock should nonetheless be held responsible because it had a copy of the policy, it received requests from plaintiff for such a copy, and, after litigation began, it provided plaintiff with a copy. However, neither John Hancock's possession of the policy, nor its decision to eventually provide plaintiff with a copy, rendered the company liable under the language of § 1132(c)(1)(B).

As the alleged plan administrator, Hewitt can be held liable for a failure or refusal "to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary . . . ." *See* 29 U.S.C § 1132(c)(1)(B). Hewitt argues that plaintiff cannot state a claim against it under § 1132(c)(1)(B) for two reasons: (1) the plaintiff did not demand a $100 per day penalty as required by the plain language of the section, and (2) just as plaintiff cannot seek a benefits award under the "catchall" provision, § 1132(a)(3), she cannot seek it under § 1132(c)(1)(B). Neither of these arguments compels dismissal. Though plaintiff did not specifically request the $100 per day penalty allowed under § 1132(c)(1)(B), she need not in order to state a claim. Furthermore, plaintiff's request for "any further relief that the court deems just and reasonable" encompasses any statutory penalties allowed for in § 1132(c)(1)(B). Hewitt's second argument also fails. Despite the availability of relief under § 1132(a)(1)(B), plaintiff is not wholly

precluded from bringing a claim under § 1132(c)(1)(B), alleging a specific failure to provide requested information. Section 1132(c)(1)(B) is not a "catchall" provision like § 1132(a)(3), which offers appropriate relief only when § 1132 fails to provide an adequate remedy elsewhere. While plan benefits may not be appropriate relief under § 1132(a)(1)(B), plaintiff's request for these benefits does not defeat her claim.

Nonetheless, plaintiff's claim still fails, for it does not allege the required elements for a violation of § 1132(c)(1)(B). The complaint states that Hewitt never provided Clark with detailed information on the optional life insurance policy's terms and conditions, nor with a copy of the policy. However, the complaint never alleges that Clark requested such information from Hewitt. Section 1132(c)(1)(B) obliges plan administrators to respond to requests for information, not to supply unsolicited information. While plaintiff does not state that her husband requested information, she does allege that her attorney made a written request for information regarding the life insurance policy on April 24, 2003. As of July 31, 2003, she had not received a response. Assuming that a request for information from a beneficiary's attorney triggers the requirements of § 1132(c)(1)(B)[1], plaintiff still fails to state a claim because the request was not made to Hewitt, the plan administrator, but to John Hancock.

Even if plaintiff had successfully alleged that Hewitt or John Hancock breached a duty to supply a copy of Clark's life insurance policy (or any other policy information), she failed to allege that any harm resulted from this breach. To properly plead a § 1132(a)(3) claim "the

---

[1] In Bartling v. Fruehauf Corp., 29 F.3d 1062, 1072 (6th Cir. 1994), the Sixth Circuit found that the beneficiary's attorney's request was not equivalent to that of the beneficiary. The court held that under ERISA a plan administrator is not required to disclose plan documents to a participant's or beneficiary's attorney absent a written release signed by the participant or beneficiary.

plaintiff must allege that the breach of fiduciary duty caused some harm to him or her that can be remedied." Kamler v. H/N Telecommunication Services, Inc., 305 F.3d 672, 681 (7th Cir. 2002). Plaintiff's alleged harm – defendants' denial of death benefits – was not caused by defendants' alleged breach of duty. Defendants' decision to deny benefits was just or unjust depending on the language of Clark's insurance policy. As noted earlier, we must wait at least until a motion for summary judgment to determine whether plaintiff is owed benefits under the insurance plan. However, it is clear that defendants' alleged failure to provide information did not result in the denial of death benefits to plaintiff. Plaintiff's entitlement (or lack of entitlement) to the insurance benefits, is wholly independent of her receipt of a copy of the policy or any other information regarding the plan.

## Counts II and III

In Count II, plaintiff alleges that defendants breached their life insurance contract with Clark by failing to provide him with a copy of the policy and denying plaintiff's claim. Count III states that defendants violated the Illinois Insurance Code, §§ 215 ILCS 5/154.5 and 5/154.6, by knowingly misrepresenting policy provisions and denying plaintiff's claim in bad faith. Defendants maintain that these claims are preempted by ERISA. While plaintiff does not contest that she cannot succeed on both her ERISA claim and Counts II and III, she asserts that her state law claims are not preempted because they are pled in the alternative.

The Supreme Court discussed the scope of ERISA preemption in Pilot Life Insurance Company v. Dedeaux, 481 U.S. 41 (1987). Noting the "expansive sweep" of § 514(a) of ERISA, the court determined that ERISA preempts any state law, including common law, that relates to an employee benefit plan. Id. at 48-49. Plaintiff's breach of contract claim and Illinois

Insurance Code claim, which are both rooted in Clark's optional life insurance policy, relate to an employee benefit plan. Thus, the preemption clause applies to these claims unless they fall within an ERISA preemption savings clause. In its motion to dismiss, Hewitt provides two reasons why plaintiff's Illinois Insurance Code claim is not saved by 29 U.S.C. § 1144(b)(2)(A), which states that nothing in the subchapter on preemption "shall be construed to exempt or relieve any person from any law of any State which regulates insurance...." Hewitt argues that Count III is preempted because the Illinois statutes upon which plaintiff relies do not qualify as laws that regulate insurance under the Supreme Court's interpretation of §1444(b)(2)(A), *see* Kentucky Ass'n of Health Plans, Inc. v. Miller, 123 S.Ct. 1471, 1479 (2003), and that it calls for state law remedies which supplement the remedies allowed by § 502 of ERISA, *see* Rudman v. Times Ins. Co., 1995 WL 239390 at *5-6 (N.D. Ill. 1995). Plaintiff does not contest these arguments.

Plaintiff does maintain, however, that she may plead these state law claims in the alternative, in the event that her ERISA claim does not succeed. Defendants respond that the likelihood of a party's success in bringing a claim has no effect on ERISA preemption. As defendants point out, in Pilot Life Ins. Co. the Supreme Court stated, "The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA." 481 U.S. at 54. This language does not allow for plaintiffs to opt out of ERISA to pursue other state law claims related to an employee benefit plan, nor does it allow for plaintiffs to plead alternative claims in the event their ERISA claims fail. As the Seventh Circuit has expressly stated, "[T]he

availability of a federal remedy is not a prerequisite for federal preemption." Lister v. Stark, 890 F.2d 941, 946 (1989).

## CONCLUSION

For the foregoing reasons John Hancock's motion to dismiss all counts is granted. Hewitt's motion to dismiss Counts II and III is granted; however, its motion to dismiss Count I is denied.

JAMES B. MORAN
Senior Judge, U. S. District Court

Nov. 19, 2003.